**Evelyn L. LONG**

v.

**BOARD OF EDUCATION OF the CITY OF PHILADELPHIA, Constance Clayton, Loretta Scuderi, and Francis J. Hoban.**

**Civ. A. No. 91–2750.**

United States District Court,
E.D. Pennsylvania.

Jan. 20, 1993.

**528**

Lanier E. Williams, Rosemarie Rhodes, Harper & Paul, Philadelphia, PA, for plaintiff.

Andrew M. Rosen, School Dist. of Philadelphia, Philadelphia, PA, for defendants.

## MEMORANDUM

KATZ, District Judge.

The Defendants in the above-captioned case have moved for summary judgment in this civil rights action. For the following reasons, I will grant their motion.

### I. Facts

Plaintiff, Evelyn Long ("Plaintiff" or "Long"), a black female, is a teacher employed by the School District of Philadelphia. Since 1978, her assignment has been to teach special education at Northeast High School. Plaintiff has sued the Board of Education of the City of Philadelphia ("the Board"); Constance Clayton ("Clayton"), the Superintendent of the Board as well as Chief Executive Officer of the Board; Loretta Scuderi ("Scuderi"), Superintendent of District Eight, a unit of the Board; and Francis J. Hoban ("Hoban"), Principal of Northeast High School (and a

white male). Plaintiff claims that since 1984 and continuing to the present, Hoban has subjected her to a continuing series of racial and sexual harassment acts and that the Board, Clayton and Scuderi have failed to prevent Hoban from subjecting Plaintiff to this harassment, failed to take corrective action, and failed to properly discipline Hoban for his conduct toward the Plaintiff. Plaintiff has raised 18 specific factual allegations of discrimination in her complaint [1]:

(1) During the 1984–85 school year, Plaintiff alleges that Hoban improperly required Plaintiff to be responsible for substitute service in the Music Department and refused Plaintiff's requests, as Special Education Chairperson, for substitute Special Education teachers. *See* Complaint at ¶¶ 13–14.

(2) During the period of 1984–88, Plaintiff alleges that Hoban denied Plaintiff extra-curricular pay, despite her assignment of the extra-curricular duties as Special Education Chairperson and despite the fact white employees and male employees received such compensation. *See* Complaint at ¶ 15.

(3) On October 16, 1986, Plaintiff alleges that Hoban charged Plaintiff with falsification of her roster. *See* Complaint at ¶ 16.

(4) On January 27, 1988, Plaintiff alleges that Hoban gave Plaintiff an unsatisfactory rating without cause and improperly removed Plaintiff from her position as Special Education Department Chairperson. *See* Complaint at ¶¶ 17–19.

(5) In February 1988, Plaintiff alleges that Hoban directed Scuderi to place false documents in Plaintiff's personnel file. *See* Complaint at ¶ 20.

(6) In April 1988, Plaintiff alleges that Hoban failed to give Plaintiff a Biology roster for the 1988–89 school year, even though she had requested the position and had the proper seniority. The position was given to a white female with less seniority. *See* Complaint at ¶ 21.

---

1. Hereinafter, when this opinion refers to a specific factual allegation, these numbers will be used.

(7) In May 1988, Plaintiff alleges that Plaintiff was forced to take sick leave for severe medical problems caused by Hoban's harassment. *See* Complaint at ¶ 22.

(8) On June 9, 1988, Plaintiff alleges that Hoban gave Plaintiff an unsatisfactory incident report, regarding an analysis of her teaching performance of a class which she was required to teach but was not qualified to teach. *See* Complaint at ¶ 23.

(9) During the summer of 1988, Plaintiff alleges that Hoban directed a custodian to break the lock on Plaintiff's locker although the school had a copy of the key for the lock. *See* Complaint at ¶ 24.

(10) On October 18, 1988, Plaintiff alleges that Plaintiff wrote a letter to Clayton regarding Hoban's harassment and requesting an appointment to review these matters. Plaintiff further alleges that no appointment was given and Clayton took no steps to correct the problem. *See* Complaint at ¶ 25.

(11) In March or April 1989, Plaintiff alleges that Plaintiff wrote a letter to Scuderi requesting action be taken against Hoban, and that no investigation nor action was taken. *See* Complaint at ¶ 26.[2]

(12) On May 17, 1989, Plaintiff alleges that Hoban admonished Plaintiff for arriving late to the auditorium for an assembly, when Plaintiff had been early but had to take a student to the dean's office. *See* Complaint at ¶ 27.

(13) In June 1989, Plaintiff alleges that Hoban required Plaintiff to relinquish certain textbooks, which were given to a white female teacher. In September 1989, Hoban instructed her not to distribute any textbooks until she received further notice although to Plaintiff's knowledge no other teachers received a similar instruction. *See* Complaint at ¶ 28 and 31.

(14) On June 5, 1989, Plaintiff alleges that the Assistant Principal at the direction of Hoban admonished Plaintiff for missing a scheduled meeting, despite the fact Plaintiff notified the Assistant Principal of a scheduling conflict. *See* Complaint at ¶ 29.

(15) In June 1990, Plaintiff alleges that Plaintiff was not given her preferred roster despite her seniority level. *See* Complaint at ¶ 30.

(16) On September 6, 1990, Plaintiff alleges that Hoban notified Plaintiff that he would be using her classroom for registration, despite other available rooms. Other space was subsequently used as a result of Plaintiff's protests. *See* Complaint at ¶ 32.

(17) In September 1990, Plaintiff alleges that Hoban caused Plaintiff's classes to be oversized and once the excess students were removed Plaintiff was left with predominately male classes. *See* Complaint at ¶ 33.

(18) On March 11, 1991, Plaintiff alleges that Hoban accused Plaintiff of improperly allowing a student to attend classes, when the student should have been excluded from school for an incomplete measles immunization. *See* Complaint at ¶ 34.

Plaintiff frames her allegations of racial and sexual harassment and discrimination as a denial of equal protection under 42 U.S.C. § 1983 (Count 1) and a violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. (Count 2).

## II. Requirements to Grant Summary Judgment

Summary judgment is authorized by Federal Rule of Civil Procedure 56, which states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to in-

---

**2.** A letter produced during discovery indicates the letter described in this allegation was dated March 20, 1989.

terrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Material" facts are those facts that might affect the outcome of the suit under the substantive law governing the claims made. An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" in light of the burdens of proof required by substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986).

As will be detailed for each count below, the Plaintiff has failed to establish the existence of any genuine issues of material fact against any of the defendants.

### III. Count 1: Plaintiff's Section 1983 Claim

#### a. Allegations 1–11 are time-barred.

 Since Congress did not provide for a statute of limitations for § 1983, the United States Supreme Court has held that state statutes of limitations applicable to personal injury actions govern all § 1983 cases. *See Wilson v. Garcia,* 471 U.S. 261, 276–280, 105 S.Ct. 1938, 1947–1949, 85 L.Ed.2d 254 (1985). For § 1983 cases arising in Pennsylvania, the Third Circuit has used Pennsylvania's two-year personal injury statute of limitations, 42 Pa.C.S.A. § 5524(2). *See Knoll v. Springfield Township School District,* 763 F.2d 584, 585 (3d Cir.1985). The statute of limitations begins running when the cause of action accrues. The accrual of a plaintiff's § 1983 claims is governed by federal law. *See Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir.1984). A civil rights cause of action accrues under federal law when the plaintiff "knew or had reason to know of the injury that constitutes the basis of [the] action." *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982).

 In the list of Plaintiff's claims above, factual allegations (1) through (11) accrued more than two years prior to the filing of Plaintiff's complaint. Plaintiff filed her complaint on April 29, 1991. There is no dispute regarding when these alleged violations occurred. With respect to allegations (1)–(4), there also is no dispute regarding whether Plaintiff knew that the actions constituted a potential cause of action at the time of their occurrence as she filed formal complaints with the Pennsylvania Human Relations Commission regarding allegations (1), (2) and (4) and with her union regarding allegation (3). Furthermore, Plaintiff has not alleged that she did not know or have reason to know at the time the allegations (5) through (11) occurred that she was being harassed or discriminated against on the basis of her sex and/or race. Therefore, this court finds that the allegations (1)—(11) must be dismissed with prejudice as these incidents are time-barred.

#### b. Liability of Defendant Clayton

 Plaintiff alleges that Defendant Clayton failed to prevent Defendant Hoban's harassment of her, failed to take corrective action, and failed to properly punish Defendant Hoban. *See* Complaint at ¶ 12.[3] Plaintiff's claim against Defendant Clayton must fail as Clayton cannot be held responsible for the actions of Defendant Hoban merely because Clayton was Hoban's supervisor. Without some affirmative conduct by ˙a supervisor that played some role in the discrimination, a supervisor cannot be held liable on a theory of *respondeat superior. See Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). A plaintiff may establish such conduct by either [1] through " 'allegations of personal direction or of actual knowledge and acquiescence' or [2] through proof of direct discrimination by the supervisor." *Andrews v. Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990) (citations omitted). Such conduct must be pleaded and proven with specificity. *Id.* No direct involvement or causal link has been alleged or established, therefore,

---

**3.** Plaintiff also alleges that Defendant Clayton failed to act as a result of Plaintiff's October 18, 1988 letter to her. As discussed *supra,* this claim is time-barred.

Plaintiff's claims against Defendant Clayton must be dismissed.

 In any event, even if Plaintiff's allegations are based upon more than just a *respondeat superior* theory, Defendant Clayton is entitled to qualified immunity as a school administrator. *Wood v. Strickland,* 420 U.S. 308, 315, 95 S.Ct. 992, 997, 43 L.Ed.2d 214 (1975), *overruled on other grounds Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A defendant is entitled to qualified immunity "if reasonable officials in the defendants' position at the relevant time could have believed, in light of clearly established law, that their conduct comported with established legal standards." *Stoneking v. Bradford Area School District,* 882 F.2d 720, 726 (3d Cir.1989) (citations omitted), *cert. denied* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). Here, there is no evidence demonstrating that Defendant Clayton acted unreasonably toward the Plaintiff. Therefore, Defendant Clayton would be entitled to qualified immunity, notwithstanding this court's finding that she is not liable under the theory of *respondeat superior.*

### c. Liability of Defendant Scuderi

 Plaintiff alleges that Defendant Clayton failed to prevent Defendant Hoban's harassment of her, failed to take corrective action, and failed to properly punish Defendant Hoban. *See* Complaint at ¶ 12.[4] As discussed with regard to the claim against Defendant Clayton, Plaintiff's claim against Defendant Scuderi must fail as Scuderi cannot be held responsible for the actions of Defendant Hoban merely because Scuderi was Hoban's supervisor. Without direct involvement by Scuderi or a causal link between Scuderi's actions and harm to the Plaintiff, Scuderi cannot be held liable on a theory of *respondeat superior. See* discussion *supra.* Therefore, as with her claims against Clayton, Plaintiff's claims against Defendant Scuderi must be dismissed.

 In any event, even if Plaintiff's allegations are based upon more than just a *respondeat superior* theory, Defendant Scuderi also is entitled to qualified immunity as a school administrator. *See* discussion *supra.* In Defendant Scuderi's case, there is no evidence demonstrating that Defendant Scuderi acted unreasonably toward the Plaintiff. In fact, the evidence indicates that Scuderi assisted the Plaintiff in receiving information Plaintiff sought. *See* Defendants' Exh. N and P (Scuderi's responses to Plaintiff's inquiries) and Plaintiff's Deposition pp. 131. Therefore, Defendant Scuderi would be entitled to qualified immunity, notwithstanding this court's finding that she is not liable under the theory of *respondeat superior.*

### d. Liability of the Board

 The only allegation Plaintiff makes against Defendant Board is that the Board failed to prevent or stop Defendant Hoban's harassment of her. *See* Complaint at ¶ 12. While municipalities and other bodies of local government, such as school boards, are "persons" capable of being sued under § 1983, such a suit may succeed only if the plaintiff can demonstrate that the "constitutional deprivation [occurred] pursuant to governmental 'custom'" or pursuant to "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). *Respondeat superior* liability does not by itself warrant a finding of liability on the part of a governmental unit. *Id.* at 691, 98 S.Ct. at 2036. The official policy requirement includes allowing the Plaintiff to prove the existence of a widespread practice that, although not authorized in written law or express municipal policy is "so permanent and well settled as to constitute a 'custom or usage' with force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970).

---

**4.** Plaintiff also alleges that Defendant Scuderi failed to act with respect to harassment by Defendant Hoban as a result of Plaintiff's March 20, 1989 letter to her. As discussed *supra,* this claim is time-barred.

Here, Plaintiff does not allege that there is a Board policy which encourages race or sex discrimination—either as a specific policy or as a widespread practice. In fact, the School District of Philadelphia has a policy of Equal Employment Opportunity which was adopted by the Board of Education in 1981. Plaintiff has not alleged or established any facts that demonstrate this valid policy was not enforced as a matter of policy or practice, therefore, Plaintiff's claims against Defendant Board must be dismissed.

### e. Liability of Defendant Hoban

To bring a successful claim under § 1983 for a denial of equal protection, the Third Circuit has required that a plaintiff "must prove the existence of purposeful discrimination. [She] must demonstrate that [she] 'receiv[ed] different treatment from that received by other individuals similarly situated.'" *Keenan v. Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992) (citing *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990)). Furthermore, to prove sexual discrimination, "a plaintiff must show that any disparate treatment was based upon her gender." *Id.* Almost all of Plaintiff's 18 specific factual allegations are directed at Hoban. All 18 specific allegations of Plaintiff's claim of denial of equal protection under § 1983 must fail. Allegations 1 through 11 (complaint ¶¶ 13–26) are time-barred. *See* discussion *supra*. Of the remaining seven allegations, all must be dismissed as there is no genuine issue of material fact that Plaintiff was subjected to purposeful discrimination or treatment different from others similarly situated based upon her sex or her race. Each allegation will be addressed separately below.

In factual allegation (12), Plaintiff alleges Hoban admonished Plaintiff for arriving late to the auditorium for an assembly. *See* Complaint at ¶ 27. Hoban issued three late notices regarding tardiness to the advisory meeting to white teachers (two females and one male) in addition to Plaintiff's notice. *See* Hoban Affidavit ¶ 6. Such notices are routinely given to teachers as a reminder. *See id.* There are no

facts to establish that the late notice was issued based upon Plaintiff's sex or race.

In cause of action (13), Plaintiff alleges Hoban required Plaintiff to relinquish certain textbooks, which were given to a white female teacher; and later Hoban instructed her not to distribute any textbooks until she received further notice although to Plaintiff's knowledge no other teachers received a similar instruction. *See* Complaint at ¶ 28 & 31. Plaintiff was required to relinquish those textbooks which the Science department head and the Vice Principal decided were not appropriate for Plaintiff's class. *See* Defendants' Exh. V, Memorandum regarding Science Texts. The decision on which book to be used in the special education science class was based upon a meeting between Hoban, the vice principal in charge of special education and the science department head. *See id.* Two other teachers received the same memorandum regarding the textbooks that were to be used with an explanation. *See id.* There is no evidence that the books were changed or notice sent based upon the Plaintiff's gender or race.

In cause of action (14), Plaintiff alleges that the Assistant Principal at the direction of Hoban admonished Plaintiff for missing a scheduled meeting, despite the fact Plaintiff notified the Assistant Principal of a scheduling conflict. *See* Complaint at ¶ 29. Plaintiff, however, admitted at her deposition that she had no proof that Assistant Principal Jean Rodgers was directed to harass Plaintiff by Hoban. *See* Plaintiff's Deposition pp. 146–153. In addition, Defendant Hoban specifically denies directing Rodgers to harass the Plaintiff. *See* Hoban Affidavit ¶ 8. Again, there is no evidence this action was taken based upon the Plaintiff's gender or race.

In cause of action (15), Plaintiff alleges she was not given her preferred roster despite her seniority level. *See* Complaint at ¶ 30. Plaintiff admitted at her deposition that there was no written custom or policy to give teachers their choice of roster. *See* Plaintiff's Deposition pp. 153–54. In fact, the contract between the School District and the teacher's union provides

only that teachers are told of proposed or tentative rosters at the end of a school year, no mention is made of seniority playing a role in the process. *See* Contract Article T–II, §§ 4a–b. Plaintiff could not provide any evidence of a teacher who was consulted with respect to her preferred roster for that school year. *See* Plaintiff's Deposition pp. 157–58. Furthermore, Plaintiff did not file a grievance as was her right if she felt that her contractual rights were being aggrieved. *See* Plaintiff's Deposition pp. 159–60. There is no evidence that Plaintiff was treated differently than others who were similarly situated. There is also no evidence that this action was taken based upon Plaintiff's gender or race.

In cause of action (16), Plaintiff alleges that Hoban notified Plaintiff that he would being using her classroom for registration, despite other available rooms. Other space was subsequently used as a result of Plaintiff notifying Hoban of the problem. *See* Complaint at ¶ 32. Traditionally, at the beginning of the school year, registration for new students is conducted in a room on the first floor close to the main office. *See* Hoban's Affidavit ¶ 9. During the 1990–91 school year, Plaintiff had one of the rooms on the first floor close to the main office. *See* Plaintiff's Deposition p. 168. Once Hoban knew its use would be inconvenient to the Plaintiff, he switched registration to a different room. *See* Hoban's Affidavit ¶ 9; Plaintiff's Deposition pp. 167–68. Furthermore, Plaintiff admitted that she was not teaching a lesson that day and the students were following a shortened schedule. *See* Plaintiff's Deposition pp. 168–69. There is no evidence that this action was taken based upon Plaintiff's gender or race.

In cause of action (17), Plaintiff alleges Hoban caused Plaintiff's classes to be oversized and once the excess students were removed Plaintiff was left with predominately male classes. *See* Complaint at ¶ 33. Plaintiff admitted that her classes were leveled before October 1990 (as provided for in her contract) and that other teachers in her department had oversized classes. *See* Plaintiff's Deposition pp. 172–73. Indeed, that academic year, 125 classes were oversized in all academic subjects involving black, white, male and female teachers. *See* Hoban Affidavit ¶ 10 and Defendants' Exh. 7 (listing oversized classes and race/sex of teacher as of September 27, 1990). There is no evidence that Plaintiff was treated differently than others who were similarly situated. There is also no evidence that this action was taken based upon Plaintiff's gender or race.

In cause of action (18), Plaintiff alleges that Hoban accused Plaintiff of improperly allowing a student to attend classes, when the student should have been excluded from school for an incomplete measles immunization. *See* Complaint at ¶ 34. During the 1990–91 school year there was an outbreak of measles of such serious nature that as of March 4, 1991, students without proof of immunization were excluded from school. *See* Hoban Affidavit ¶ 10 and Defendants' Exh. 8 (notices sent to parents). The number of excluded students as of March 6, 1991 totaled 953. *See* Defendants' Exh. 10. Thirty-three out of the 84 advisors received the same form memorandum as Plaintiff. *See* Defendants' Exh. 11. Again, there is no evidence that Plaintiff was treated differently than others similarly situated. There is also no evidence that this action was taken based upon Plaintiff's gender or race.

In all of the above described incidents, Plaintiff has failed to establish any genuine issue that the actions were taken based upon her gender or race. Indeed, the evidence demonstrates Plaintiff was treated the same as others who were similarly situated.

Based upon the foregoing discussion, none of the Plaintiff's § 1983 claims against any the defendants pose any genuine issue of material fact and therefore must be dismissed.

### IV. Plaintiff's PHRA Claims.

 This court also will dismiss Plaintiff's supplemental state law claims arising under the PHRA. Plaintiff brought two PHRC claims against the School District of Philadelphia. One claim was filed September 1, 1987 and the second filed March 2,

1988. The first claim referred to allegations (1) and (2) stated in her complaint at ¶¶ 13–15. The second claim stated that she was subjected to retaliatory discrimination for filing her first complaint and allegation (4) listed in her complaint at ¶¶ 17–19. On November 30, 1988, Plaintiff was provided with the appropriate notice by the PHRC that Plaintiff could bring an action in the court of common pleas if she so chose with regard to her September 1, 1987 complaint. The Pennsylvania courts have determined that a two-year statute of limitations is applicable, and a plaintiff must file her complaint within two years of receiving her right to institute a court action. *See Raleigh v. Westinghouse Electric Corp.*, 379 Pa.Super. 606, 550 A.2d 1013, 1014 (1988), *appeal denied* 522 Pa. 613, 563 A.2d 499 (1989). Therefore, Plaintiff's claims (1) and (2) must be dismissed with prejudice as being time-barred since Plaintiff did not file suit within two years of her notice of her right to sue.

Neither side has presented evidence that the PHRC provided Plaintiff with appropriate notice of her right to institute a court action regarding her March 2, 1988 complaint. If notification was sent, the Plaintiff's claim would be time barred. This court, however, does not need to reach such a finding regarding allegation (4). As this court has dismissed all claims over which this court has original jurisdiction, this court will not exercise its discretion to decide this supplemental state law claim. *See* 28 U.S.C. § 1367(c)(3).

■ Since the filing of her March 2, 1988 complaint, Plaintiff has not filed any complaint regarding alleged discrimination. *See* Plaintiff's Deposition p. 134. Pennsylvania court have established that "an aggrieved employee is not at liberty to commence a civil action grounded on a violation of the PHRA without first presenting her claim to the PHRC." *James v. International Business Machines Corp.*, 737 F.Supp. 1420, 1426 (E.D.Pa.1990) (Ditter, J.) (citing *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 921 (1989). Plaintiff's failure to file a complaint with the PHRC regarding her al-

leged sex and race discrimination claims (5) through (18) [Complaint ¶¶ 20–34] precludes any court action on these matters. Therefore, all Plaintiff's PHRC claims must be dismissed.

This court, therefore, dismisses all Plaintiff's federal civil rights claims and her supplemental PHRA claims.