Lamont R. JACKSON, Sr.

v.

Joseph NICOLETTI, Officer,
and Remshaw, Officer.

Civ. A. No. 94–4229.

United States District Court,
E.D. Pennsylvania.

Oct. 28, 1994.

As Amended Dec. 21, 1994.

Lamont R. Jackson, Sr., pro se.

Milton Velez, Asst. City Sol., Philadelphia,
PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

### I. *Introduction*

Plaintiff Lamont R. Jackson is an inmate at the State Correctional Institution in Coal Township, Pennsylvania. In this § 1983 action, Jackson alleges that defendants, Philadelphia police officers Joseph Nicoletti and Vincent Remshaw, used excessive force when they arrested him.

Nicoletti and Remshaw have moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint is time-barred. For the reasons set forth below, we will grant the motion.

Dates are, as will be seen, critical to our discussion. The officers arrested Jackson on June 11, 1992. Jackson signed his complaint

on June 1, 1994.[1] The envelope in which Jackson mailed his complaint to the Clerk lacks a postmark, but the Pitney–Bowes metered stamp on the envelope reads July 8, 1994. The Clerk of this Court received Jackson's complaint and stamped it "filed" on July 11, 1994.

On October 6, 1994, we issued an Order requiring Jackson to answer two questions: (1) "What did you do to get your complaint in this case mailed to federal court?"; and (2) "When did you give your complaint ... to anyone at the prison for mailing to federal court (give the day, month, and year)?" For reasons that will become clear below, we had hoped to learn the date on which Jackson gave his complaint to prison administrators for mailing, as well as the procedure by which the state prison handles a prisoner's legal mail. Jackson's answers were for the most part unhelpful to this inquiry.[2]

II. *Legal Standard*

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we of course must take all allegations contained in the complaint as true and construe them in a light most favorable to the plaintiff. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–51, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). We may grant a motion to dismiss for failure to state a claim upon which relief can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frazi-*

*er v. Southeastern Pa. Transp. Auth.*, 785 F.2d 65, 66 (3d Cir.1986).

Normally, parties will not learn that a limitations period has expired until the discovery phase of the trial. Thus, in most cases Federal Rule of Civil Procedure 56 will be the proper vehicle for dismissal. If, however, the face of pleading reveals that the limitations period has expired, then a Court may dismiss the action under Rule 12(b)(6). *See Clark v. Sears Roebuck & Co.*, 816 F.Supp. 1064, 1067 (E.D.Pa.1993). This exception is consistent with the legal standard of Rule 12(b)(6): a plaintiff who admits that a limitations period has expired can prove no set of facts under which he may recover.

The first two steps of our analysis—determining the limitations period and the date on which Jackson's claim accrued—involve the straightforward application of existing law. In the third step of our analysis—determining whether Jackson filed his action within the limitations period—we encounter an important, unaddressed issue of law.

III. *Discussion*

A. *Determination of the Limitations Period and the Date of Accrual*

Section 1983 does not have an explicit limitations period. The Supreme Court has established that state statutes of limitations govern § 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 268–77, 105 S.Ct. 1938, 1943–47, 85 L.Ed.2d 254 (1985); *Owens v. Okure*, 488 U.S. 235, 248–51, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989). *Wilson* held that courts should apply a state's personal injury statute of limitations to § 1983 claims. *Wilson*, 471

1. Jackson did not execute his complaint before a notary, and thus for present purposes we take him at his word that he signed his complaint that day.

2. We set out Jackson's responses in full:

    Answer # 1—The filing of the date of this police brutility [*sic*] case was back in 7–92, by my Mother Mrs. Loretta Jackson.... And then since that day, I was interviewed by Internal Affairs—Mr. Knowland where I was incarcerated at the P.I.C.C. Prison on 8301 State Rd. Also Mrs. Patricia Ruck, has been assisting me over the past 2 years concerning this case, who is a Public Defender. The last date of filing a civil suite [*sic*] against these 2

    officers was 6–94 or 7–94 because my complaint was sent back because of being sent to the wrong District.

    Answer # 2—I went to the Law Library to get the correct forms I needed, and had had the 42 USC § 1983 forms certified, and sent to your office. No attorney has assist [*sic*] me yet concerning this case.

    Jackson dated his letter on October 11, 1994; the envelope bears a Pitney–Bowes metered stamp of October 12, 1994 and a cancellation date of October 13, 1994. The letter bears the Clerk's stamped date of October 18, 1994. Thus, seven days elapsed between the date of Jackson's letter and the Clerk's receipt of it.

U.S. at 268–77, 105 S.Ct. at 1943–47. *Owens* clarified *Wilson*'s reach in states that have different limitations periods for different types of personal injuries; in those states, courts that confront § 1983 claims must apply the residual statute of limitations for personal injuries. *Owens,* 488 U.S. at 248–51, 109 S.Ct. at 581–82.

The Pennsylvania statute of limitations for personal injury is two years. 42 Pa.Cons. Stat.Ann. § 5524 (1981 & Supp.1994). Our Court of Appeals has identified that "the appropriate limitations period for section 1983 claim[s]" is section 5524. *Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989). A § 1983 claimant must follow section 5524's command that "actions and proceedings must be commenced within two years" of the date on which his claim accrues.

■ Although state law determines the duration of the limitations period, federal law determines the date of accrual. *Long v. Bd. of Educ. of the City of Philadelphia,* 812 F.Supp. 525, 531 (E.D.Pa.), *aff'd without op.,* 8 F.3d 811 (3d Cir.1993). *Long* informs us that "[a] civil rights cause of action accrues under federal law when the plaintiff 'knew or had reason to know of the injury that constitutes the basis of [the] action.'" *Long,* 812 F.Supp. at 530 (citing *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982)).

■ Jackson's complaint arises from injuries that he suffered on the date of his arrest. He alleges that officers Nicoletti and Remshaw illegally entered his mother's garage on June 11, 1992 and used unnecessary force in arresting him. Thus, following *Long,* 812 F.Supp. at 530, and *Sandutch,* 684 F.2d at 254, Jackson's claim accrued on June 11, 1992. Section 5524 thus requires Jackson to have commenced his action by June 11, 1994.

**B. *Determination of the Date of Commencement of the Action***

**1. *The Plain Language of the Federal Rules of Civil Procedure***

■ We must next determine whether Jackson "commenced" his action within two

years of June 11, 1992. Federal Rule of Civil Procedure 3 is clear on this matter: "A civil action is commenced by filing a complaint with the court." Federal Rule of Civil Procedure 5(e) resolves any potential ambiguity in the phrase "filing ... with the court". Rule 5(e) teaches us that "[t]he filing of papers with the court as required by these rules shall be made by filing them with the clerk of the court". If we apply these rules, then Jackson did not commence his suit until July 11, 1994, when his complaint was in the hands of the Clerk of this Court. More specifically, we could not find that Jackson commenced his § 1983 claim when he signed his complaint on June 1, 1994. Nor could we find that he commenced his suit by turning over his papers to prison administrators for mailing, even if that action occurred on or before June 11, 1994. Strict operation of the rules' plain language would impose a duty on Jackson to file his complaint with the clerk of the court by June 11, 1994.

**2. *The Extension of Houston v. Lack to the Facts of this Case***

■ We recognize that prisoners acting *pro se* receive the benefit of substantive and procedural protections not available to represented plaintiffs.

First, in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Supreme Court held that courts must liberally construe the factual allegations of a *pro se* complaint. *Id.* at 521, 92 S.Ct. at 596; *see also Denton v. Hernandez,* 504 U.S. 25, ———–———, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992); *Brow v. Farrelly,* 994 F.2d 1027, 1036–37 (3d Cir.1993).[3]

Second, in 1989, the Supreme Court extended procedural protections to *pro se* prisoners. In *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Court held that a prisoner's notice of appeal of a habeas corpus petition is "filed" for the purposes of Federal Rule of Appellate Proce-

---

**3.** The Supreme Court has acknowledged that "the liberal pleading standard of *Haines* applies only to a plaintiff's factual allegations." *See*

*Neitzke v. Williams,* 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 1834 n. 9, 104 L.Ed.2d 338 (1989).

dure 4(a)(1) when the prisoner delivers it to "prison authorities". *Id.* at 275–77, 108 S.Ct. at 2385. The case effectually modified Federal Rule of Appellate Procedure 4(a), which establishes the general rule that notices of appeal are effective if received by the clerk of the district court within thirty days of the order appealed from. *Houston* in effect created a "mailbox" rule, *see id.* at 273–75, 108 S.Ct. at 2384, insofar as notices of appeals by *pro se* prisoners are effective when the notices leave the prisoners' hands.

The Supreme Court in *Houston* rested the formation of this mailbox rule on three related rationales, all of which depend upon a *pro se* prisoner's unique status as a litigant. First, a prisoner is unable to control the filing of a notice of appeal. "Unlike other litigants", the Court noted, "*pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." *Id.* at 271, 108 S.Ct. at 2382. Although other litigants may "choose" to use the "vagaries of the mail", only the *pro se* prisoner "is forced to do so" because of his incarceration. *Id.* Second, the Court exhibited a palpable distrust of prison officials. It reasoned that "the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Id.* Finally, the Court worried about the obstacles that a prisoner might face in trying to prove that prison authorities delayed sending a notice of appeal to the proper court:

> [I]f there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court

clerk's failure to stamp the notice on the date received.

*Id.*

Most important in the context of the issue before us today, the Court did not explicitly rest its holding on the relatively short, 30–day period that a prisoner has in which to file his notice of appeal. Instead, the Court's holding focused on the attributes associated with the prisoner's unique situation, not on the attributes of the particular filing.

Four Justices dissented from the Court's holding. The dissent primarily objected that the Court had created a new procedural rule directly contrary to the plain language of the Federal Rules of Appellate Procedure.[4] *See id.* at 275–79, 108 S.Ct. at 2385–86 (Scalia J., dissenting, joined by Rehnquist, C.J., and O'Connor and Kennedy, JJ.). The dissent also justifiably complained that the Court's rationale had no limiting principle. *Pro se* prisoners occupy a position little different from, for example, United States citizens in foreign countries (for whom delivery of a notice of appeal to a consul might suffice) or military personnel in a war zone (for whom delivery to a commanding officer might suffice). *Id.*[5]

The dissenters did not take notice of another objection that has become apparent since *Houston.* Not only do people such as U.S. citizens abroad or military personnel occupy positions analogous to prisoners, but *Houston* also need not be limited to notices of appeal. Indeed, the *ratio decidendi* of *Houston*'s holding depends not at all on the type of paper filed but rather on prisoners' confinement and lack of control over their lawsuits. We should not be surprised, then, to find that other circuits have extended the *Houston* rule to other scenarios not explicitly within *Houston*'s holding.

In *Lewis v. Richmond City Police Department,* 947 F.2d 733 (4th Cir.1991), for example, the Fourth Circuit extended *Houston* to

---

4. The holding of *Houston* ultimately was incorporated into the text of the Rule 4. *See* Fed. R.App.P. 4(c).

5. The result in *Houston* is all the more surprising in the light of the Court's unanimous decision one month earlier in *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100

L.Ed.2d 178 (1988). In *Budinich,* the Court instructed that "the taking of an appeal within the prescribed time is mandatory and jurisdictional". *Id.* at 203, 108 S.Ct. at 1722. Indeed, Rule 4(a) echoes 28 U.S.C. § 2107(a); both require that a party file a notice of appeal within thirty days.

cover the issue before us today. In *Lewis*, a *pro se* prisoner gave his complaint to prison authorities before the limitations period expired, but the clerk of the district court did not stamp the complaint "filed" until after the period expired. *Id.* at 734–35. The court found the language of Federal Rule of Civil Procedure 5(e) to be "so similar to the Rules at issue in *Houston* ... that it permits an identical interpretation." *Id.* at 736. Moreover, "*Houston* itself gives no indication that it should be limited to habeas corpus appeals." *Id.* At least two other circuits and one district court have followed *Lewis*'s lead in expanding *Houston* to complaints filed by prisoners with the clerk after the limitations period has expired. *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), *modified on other grounds on reh'g,* 25 F.3d 81 (1994); *Garvey v. Vaughn,* 993 F.2d 776, 780, 781 & n. 13 (11th Cir.1993); *Higgenbottom v. McManus,* 840 F.Supp. 454, 455–56 (W.D.Ky. 1994). Each opinion emphasizes the status of the *pro se* prisoner as litigant, not the type of filing. *Dory,* 999 F.2d at 682 ("The foundation of *Houston* is the inherent disadvantage suffered by the *pro se* litigant in his inability to monitor the course of his litigation."); *Garvey,* 993 F.2d at 780 ("Central to the Court's holding in *Houston* is its concern for fairness in recognition of the 'unique' disadvantages of an incarcerated pro se litigant for court filings."); *Higgenbottom,* 840 F.Supp. at 455–56 ("Extending *Houston*'s mailbox rule ... extends no special privilege to [a prisoner], but merely takes into consideration the unique disabilities that [his] status forces upon him.") (footnote omitted).[6]

The Third Circuit has interpreted *Houston* both broadly, *see In re Flanagan,* 999 F.2d 753, 755 (3d Cir.1993) (extending *Houston* to a *pro se* prisoner's appeal to the district

court from an order of the bankruptcy court), and narrowly, *see Shendock v. Director, Office of Workers' Compensation Programs,* 893 F.2d 1458, 1465–66 (3d Cir.) (refusing to extend "the precise holding" of *Houston* to a petition for administrative review filed by a *pro se* litigant who was not a prisoner), *cert. denied,* 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990). Our Circuit even has proposed a companion test to *Houston* to deal with the related problem of document flow *to* a prisoner. *See United States v. Grana,* 864 F.2d 312, 316 (3d Cir.1989) (holding that "any prison delay in transmitting to the prisoner notice of the district court's final order or judgment shall be excluded from the computation of an appellant's time for taking an appeal").[7]

In the light of this canvass of authority, we hesitate to dismiss Jackson's claim under the straightforward application of Federal Rules of Civil Procedure 3 and 5(e) that we described in Part B.1. We recognize, however, that there is no binding authority that compels us either to grant or deny the motion.

We believe that six reasons counsel against creating a mailbox rule for *pro se* prisoner complaints. First, as the dissent in *Houston* rightly argued, the *Houston* rule altered unambiguous language without finding an underlying constitutional violation. *See Houston,* 487 U.S. at 275–79, 108 S.Ct. at 2385–86. Certainly *Houston* has constitutional ramifications or overtones; by altering the clear language of Rules 3 and 5, the Court may well have avoided a series of due process questions. In the absence of a constitutional violation, however, courts have a duty to apply plain and unambiguous language enacted pursuant to Congressionally prescribed procedures.[8] *Cf. United States v. Ron Pair*

---

**6.** Indeed, because *Houston*'s rationale rested on prisoners' status, there is no reason why *Houston* should be limited to filings with the clerk of the court. At least one court has so recognized. In *Faile v. Upjohn Co.,* 988 F.2d 985 (9th Cir.1993), the Ninth Circuit extended *Houston* to cover interrogatories served upon a party pursuant to Federal Rule of Civil Procedure 33. *Id.* at 989. For the reasons why we regard such an extension to be ill-advised, see note 10 and accompanying text at 1112–1113 *infra.*

**7.** *Grana* excludes only the time attributable to prison delay; if prison authorities did not delay

at all, presumably the prisoner would not receive the benefit of any extra time.

Of course, a prisoner who gives a notice of appeal to prison officials beyond the time prescribed in Federal Rule of Appellate Procedure 4(a) would not receive the benefit of the *Houston* rule. *See Smith v. Evans,* 853 F.2d 155, 156 (3d Cir.1988).

**8.** It is important to understand why *Haines v. Kerner, supra,* 404 U.S. 519, 92 S.Ct. 594, 30

*Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ") (alteration in original) (citation omitted); *McNeil v. United States*, — U.S. ——, ——, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993) ("We are not free to rewrite [unambiguous] statutory text.").[9]

Certainly no one would doubt the power of Article III judges to prevent prison administrators from intentionally delaying prisoners' access to the courts by delaying their legal filings. Yet we would hesitate to alter clear statutory language merely on the presumption that such violations *could* happen in the future. Moreover, to presume that prison administrators would wilfully deny prisoners' constitutional rights, *see Houston*, 487 U.S. at 272–73, 108 S.Ct. at 2383—without a showing that they have in fact done so—seems to

disregard the deference that we owe to prison administrators as public officials. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 546–49, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979).

Second, it is only too clear to us that a broad application of the *Houston* rule would create an excessive administrative burden for the district courts. A mailbox rule for *pro se* prisoners' complaints would create as a collateral issue in any close case the date on which a prisoner handed over his complaint to prison administrators.[10] Represented litigants (or *pro se* litigants who are not prisoners) could enforce an expired statute of limitations only through extended (and collateral) motion practice, creating delay and raising costs. Rule 1 of the Federal Rules of Civil Procedure instructs us that the federal rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action," and a broad application of the *Houston* rule unquestion-

---

L.Ed.2d 652, does not violate this principle of legislative deference. The rationale of *Haines* rests on Federal Rule of Civil Procedure 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief". *Haines* cautions a court not to demand *pro se* litigants to meet pleading standards that represented litigants might meet but that no rule requires.

The opposite situation is presented in *Houston*. Federal Rule of Appellate Procedure 4(a) demands that all litigants meet certain requirements (to wit, to file a notice of appeal with the clerk within thirty days). *Houston* undermines Rule 4(a) by exempting a class of litigants from its operation.

Such selective enforcement of procedural rules seems unwise to us. As the dissent counselled in *Houston*:

> Rules of procedure are a necessary part of an orderly system of justice. Their efficacy, however, depends upon the willingness of the courts to enforce them according to their terms. Changes in rules whose inflexibility has turned out to work hardship should be effected by the process of amendment, not by *ad hoc* relaxations by this Court in particular cases. Such dispensations in the long run actually produce mischievous results, undermining the certainty of the rules and causing confusion among the lower courts and the bar.

*Houston, supra*, 487 U.S. at 283, 108 S.Ct. at 2389 (citing *Thompson v. INS*, 375 U.S. 384, 389–90, 84 S.Ct. 397, 400, 11 L.Ed.2d 404 (1964)).

9. We recognize that Congress "enabled," rather than "enacted," the rules of procedure, *see* 28 U.S.C. §§ 2071–2074, but we do not believe that this distinction should alter an Article III judge's duty to interpret unambiguous text according to its plain meaning.

10. Moreover, though the issue is not before us, to the extent that *Houston* is extended to motion practice, deadlines in *pro se* prisoner cases will become unenforceable. The district court would lose the ability ever conclusively to determine whether a prisoner had "filed" papers on time except by allowing costly, collateral discovery.

Admittedly, for the majority of prisoner cases, the administration of deadlines is a non-issue; discretion to modify deadlines under Federal Rule of Civil Procedure 6(b) allows a court to protect a prisoner from untimeliness. This Rule 6(b) power is by no means a complete answer to the practical problems associated with exempting *pro se* prisoners from all of the Federal Rules' deadlines. Consider the application of *Houston* to dispositive motions. The defendant files a motion for summary judgment. More than thirteen business days elapse without a response. If the district judge shares the distrust of prison authorities that animated the *Houston* majority, should the judge grant the motion as unopposed? Or should such a judge require the Warden of the prisoner's institution—and all corrections officers having responsibility for that prisoner—to execute affidavits negating their possession of any writing from the prisoner after the Rule 56 motion was filed?

ably deviates from this clear command.[11]

The facts in *Houston* illustrate the difficulty in administering such a rule. The *Houston* Court sought to reconcile (1) the date the prisoner handed his notice of appeal to prison officials; (2) the postmark on the envelope (which had been lost); (3) the date in the prison log (which was ambiguous); (4) the date that the Clerk of the District Court received the notice of appeal; and (5) the date that the Clerk stamped the notice as "filed". *Houston*, 487 U.S. at 268–69, 108 S.Ct. at 2381.[12] In many cases, however, written evidence will be entirely ambiguous, or entirely absent. If, as is likely, the prisoner "remembers" handing over the complaint before the deadline, and, as is also likely, the prison administrator has no memory of the event at all, a court will not be able to resolve the limitations issue until trial, when it—or the jury—is allowed to make credibility determinations.

Third, the *Houston* rule becomes less persuasive in its application to the issue before us (to wit, an allegedly expired limitations period). The *Houston* rule is a natural response to a short period of time in which a litigant must assert or lose rights. In Pennsylvania, however, a § 1983 litigant will lose his claim only after two years have passed; the discovery rule of *Sandutch* will ensure that every § 1983 claimant has a full two years to assert his claim. *Sandutch, supra,* 684 F.2d at 254; *see also Hauptmann v. Wilentz,* 570 F.Supp. 351, 396 (D.N.J.1983), *aff'd without op.,* 770 F.2d 1070 (1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986). If a *pro se* prisoner fails to mail his complaint to the clerk of the court

until the last moment, then the fault for delay rests in large measure upon him.

Fourth, the policies of finality and repose counsel strict application of statutes of limitation. *See, e.g., United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) ("Statutes of limitations ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'") (citations omitted); *cf. Wilson v. Garcia, supra,* 471 U.S. at 271, 105 S.Ct. at 1944 ("Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten."). Application of the *Houston* rule to statutes of limitations would create an uncertainty for defendants, for whom finality would depend in part upon whether a plaintiff had been incarcerated, and, if so, whether the plaintiff had a lawyer or not.

Our Court of Appeals has also recognized the "strong policy considerations underlying the enactment of statutes of limitation." *United States v. Richardson,* 889 F.2d 37, 40 (3d Cir.1989). In *Richardson,* our Court of Appeals counselled that "[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights.... [They] are not 'simple technicalities,' but rather, 'fundamen-

---

**11.** It is true that complaints by indigent *pro se* plaintiffs are filed only by order of the district court, after a determination of non-frivolity pursuant to 28 U.S.C. § 1915. In *pro se* cases, however, the clerk stamps the *in forma pauperis* petition with the date that the petition and complaint are received. When the court authorizes the commencement of the suit, the clerk files the complaint, and the date of the complaint relates back to the date of the *in forma pauperis* petition. Thus, an indigent plaintiff will never fall victim to a statute of limitations as a result of the § 1915 determination. In this case, for example, we did not issue a § 1915 Order until August 9, 1994, but the complaint would still be deemed filed on July 11, 1994, the date of Jackson's

original submission. *See Jarrett v. US Sprint Communications Co.,* 22 F.3d 256, 259 (10th Cir.1994).

**12.** The facts of *Houston* did not present even more difficult questions, such as those that we have faced. For example, what if Houston had given the notice to prison officials for mailing to his mother, who was to photocopy the document before filing it? What if Houston had mailed his notice to the wrong court, and the wrong court either forwarded it to the correct court or returned it? In these cases, would the notice still be timely?

tal to a well-ordered judicial system.'" *Id.* (citation omitted).

Fifth, as we have suggested above,[13] the extension of *Houston* to these cases effectively exempts *pro se* prisoners from all of the deadlines of the Federal Rules of Civil Procedure as well as adds an elasticity to the statute of limitations unique to them. These consequences have the perverse result of introducing a disincentive for prisoners seeking or accepting the appointment of counsel, because represented prisoners would not enjoy these wholesale exemptions. This new disincentive would be doubly perverse in view of our Court of Appeals' recent encouragement to district judges to appoint lawyers in such cases. *See Tabron v. Grace,* 6 F.3d 147 (3d Cir.1993).

Finally, as a practical matter, we note that, of the five justices who constituted the majority in *Houston,* four have retired from the Court. It is uncertain whether the Court would decide *Houston* similarly today, and it is even less certain whether five justices would now extend the *Houston* rule to statutes of limitations.

## IV. *Conclusion*

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), instructs us that a motion to dismiss for failure to state a claim may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In this case, Jackson's claim accrued on June 11, 1994, yet the Clerk did not receive and file the complaint until July 11, 1994. Thus, we

conclude that Pennsylvania's two-year statute of limitations bars Jackson's claim.[14]

An appropriate Order follows.

## ORDER

AND NOW, this 21st day of December, 1994, upon consideration of defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth in the accompanying Amended Memorandum filed this day, it is hereby ORDERED that:

1. Our prior Order dated October 28, 1994 is VACATED;

2. Our prior Memorandum dated October 28, 1994 is AMENDED, as attached to this Order;

3. The defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED for the reasons set forth in the attached, amended version of our Memorandum of October 28, 1994; and

4. The Clerk SHALL CLOSE this case statistically.

---

**13.** *See* note 10, *supra,* and accompanying text at 1112–1113.

**14.** We recognize that a leading treatise warns that, in applying the *Conley* standard, a "court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme". 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). In our original Memorandum, which we have amended this day, we denied defendants' motion to dismiss and sought to certify the question that this Memorandum addresses for our Court of Appeals. In that Memorandum we "recognize[d] ... that ours

should not be the final word on this issue" because of the practical importance to this question to this Court, and we adhere to that sentiment. Unfortunately, it appears that 28 U.S.C. § 1292(b), when read in conjunction with Federal Rule of Appellate Procedure 5(a), may be regarded as not permitting the court of appeals to ·*decide* whether or not to hear the certified question unless a party files a petition for permission to appeal with the court of appeals after the district court's certification. We believe that such an interpretation at the very least impedes the policy underlying § 1292(b); moreover, the effects of such an interpretation are stark in a case such as this.