**Shea T. BURNS–VIDLAK, a minor, by his mother and next friend Honey BURNS, and George Cohn, Plaintiffs,**

v.

**Susan CHANDLER, in her official capacity as the Director of the Department of Human Services of the State of Hawai'i and State of Hawai'i, Defendants.**

No. Civ. 95–00892 ACK.

United States District Court,
D. Hawai'i.

June 24, 1997.

---

# 1145

*ORDER DENYING DEFENDANTS' MO-TION FOR PARTIAL SUMMARY JUDGMENT ON THE AVAILABILITY OF PUNITIVE DAMAGES IN AC-TIONS BROUGHT UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT § 504*

KAY, Chief Judge.

## BACKGROUND

On April 12, 1996, the Court granted in part Plaintiffs' motion for partial summary judgment. *See Burns–Vidlak v. Chandler,* 939 F.Supp. 765 (D.Hawai'i 1996). The Court found that the State of Hawai'i's QUEST health care program, from its inception on August 1, 1994 until its amendment on March 30, 1996, unlawfully discriminated against blind and disabled individuals in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court accordingly found Plaintiffs are entitled to recover damages for such discrimination during the relevant period.

On May 14, 1996, subsequent to the Court's order, Plaintiffs were granted leave to amend their complaint to add a claim for punitive damages and a jury demand. The amended complaint, which also adds the State of Hawai'i as a defendant, and the jury demand, were filed on May 15, 1996.

On March 14, 1997, Susan Chandler and the State of Hawai'i (hereinafter "Defendants") filed a motion for partial summary judgment on the "narrow legal question" of whether punitive damages can be recovered under § 504 and Title II of the American with Disabilities Act ("ADA").[1] On May 23, 1997, the Plaintiffs filed their opposition. On May 31, 1997, Defendants filed their reply. On June 10, 1997, the Court held a hearing on the matter.

Bradford L. Tannen, Alston, Hunt, Floyd & Ing, Honolulu, HI, for Plaintiffs.

Susan Barr, G. Cher Foerster, Nancy Albano, Office of Atty. Gen., Honolulu, HI, for Defendants.

1. In this order, however, the Court will focus solely on the Rehabilitation Act because it provides the basis for the remedies under the ADA: The remedies, procedures, and rights set forth in section 794a of Title 29 [§ 505 of the Rehabilitation Act] shall be the remedies, proce-dures, and rights this subchapter provides to any person alleging discrimination on the basis of liability in-violation of section 12132 of this title.
*See* 42 U.S.C. § 12133.

## STANDARD OF REVIEW

Although Defendants label their motion as one for summary judgment, they are asking the Court to decide that as a matter of law punitive damages are not allowed under § 504. For that reason, Defendants' motion is more akin to a motion to dismiss that tests the legal sufficiency of a claim than one for summary judgment involving the particular facts of a case. Accordingly, the motion to dismiss standard governs this claim.

■ Under Fed.R.Civ.P. 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini,* 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir.1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri,* 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

■ In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

## DISCUSSION

Through this motion, the Count undertakes the unenviable task of determining whether punitive damages are allowed by the Rehabilitation Act § 504, a statute whose provision on remedies depends on Title VI, an implied cause of action. With an implied cause of action as its foundation, this Court's task in determining the remedies available resembles the plight of a prodigal son without a home.

I. *Overview of the Rehabilitation Act and its remedies*

In 1973, Congress passed the Rehabilitation Act § 504 in an effort to protect "handicapped" citizens from discrimination. *See* 29 U.S.C. § 794. Section 504 did not set forth a private cause of action and thus did not define the remedies available in such a suit. Nevertheless, in 1977, the Seventh Circuit found that § 504 created an implied cause of action. *See e.g. Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977).[2] The remedies available under § 504, however, remained undefined.

In 1978, Congress did address the question of remedies by passing Section 505 which states that "the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved ... under section 794 of this title." *See* 29 U.S.C. § 794a(a)(2). After this amendment, every Circuit that confronted the issue found an implied cause of action under § 504. *See e.g. Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir.1980); *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir.1980); *NAACP v. Medical Center, Inc.,* 599 F.2d 1247 (3rd Cir.1979).

Some of these cases, most notably the Ninth Circuit's decision in *Kling,* held that compensatory damages were also allowed under § 504. *See Kling v. County of Los Angeles,* 769 F.2d 532, 534 (9th Cir.1985), *rev'd on other grounds,* 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985). Until 1994,

---

2. The Eighth and Second Circuits soon followed the reasoning in *Lloyd. See United Handicapped Federation v. Andre,* 558 F.2d 413 (8th Cir.1977); *Kampmeier v. Nyquist,* 553 F.2d 296 (2nd Cir. 1977).

however, it appears that a majority of cases held that punitive damages were not available under § 504. *See Moreno v. Consolidated Rail Corporation,* 99 F.3d 782, 790 (6th Cir.1996) (collecting cases). Since then, the majority of courts seem to have shifted, holding that punitive damages are allowed under § 504. *See e.g. Kilroy v. Husson College,* 959 F.Supp. 22 (D.Maine 1997) (holding that "punitive damages are recoverable under § 504); *Hernandez v. Hartford,* 959 F.Supp. 125 (D.Conn.1997) (holding that "the analysis developed in *Franklin* governs the inquiry under the Rehabilitation Act as well and inescapably leads to the conclusion that both compensatory and punitive damages are available" under § 504); *Todd v. Elkins,* 105 F.3d 663 (8th Cir.1997) (unpublished) (upholding denial of motion to dismiss a § 504 claim seeking punitive damages); *DeLeo v. Stamford,* 919 F.Supp. 70, 75 (D.Conn.1995) (holding that "punitive damages are included within the full panoply of remedies" of § 504); *Zaffino v. Surles,* 1995 WL 146207 (S.D.N.Y.1995) (denying motion to dismiss § 504 punitive damage claim); *Garrett v. Chicago School Reform Board,* 1996 WL 411319 (N.D.Ill.1996) (denying motion to strike plaintiff's claim for punitive damages under § 504); *Simenson v. Hoffman,* 1995 WL 631804 (N.D.Ill.1995) (holding that plaintiff had "sufficiently alleged facts which permit an inference of intentional discrimination and are therefore entitled to seek compensatory and punitive damages" under § 504); *but see Moreno v. Consolidated Rail Corporation,* 99 F.3d 782, 790 (6th Cir.1996) (en banc); *Winfrey v. Chicago,* 957 F.Supp. 1014 (N.D.Ill.1997); *Dertz v. Chicago,* 1997 WL 85169 (N.D.Ill.1997); *Doe v. Marshall,* 882 F.Supp. 1504, 1508 n. 4. (E.D.Pa.1995).

The genesis of this change was the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin,* the Court confronted the issue of whether Title IX supports a claim for monetary damages. *Id.* at 62, 112 S.Ct. at 1030–31. In holding that monetary damages were indeed available in Title IX cases, the Court stated that:

> the general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.

*Id.* at 70–71, 112 S.Ct. at 1035. The Defendants argue that *Franklin* does not apply.

II. *The Court reads the Supreme Court's language in Franklin, a Title IX case, as well dicta in the Ninth, Eighth, Eleventh, Fourth and Third Circuits, all § 504 actions, as allowing an award of punitive damages*

Before surveying the case law, it is important to interpret the lexicon. In *Franklin,* the Supreme Court held that "monetary damages" were available under Title IX and that absent direction by Congress, courts have the power to award "appropriate relief" in other federal statutory cases. The Ninth Circuit has held that the "full panoply" of damages are available under § 504. *See e.g. Kling v. Los Angeles,* 769 F.2d 532, 534 (9th Cir.1985), *rev. on other grounds,* 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985); *followed by Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990) and *Greater Los Angeles Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103 (9th Cir.1987). The Fourth Circuit has also held that the "full panoply" of damages are available under § 504. *Pandazides v. Virginia Board of Education,* 13 F.3d 823 (4th Cir.1994). Lastly, the Eighth, Eleventh and arguably the Third Circuits have held that the "full spectrum" of remedies are available under § 504. *See Rodgers v. Magnet Cove Public Schools,* 34 F.3d 642 (8th Cir.1994); *Waldrop v. Southern Company Services, Inc.,* 24 F.3d 152 (11th Cir.1994); *W.B. v. Matula,* 67 F.3d 484 (3rd Cir.1995).

Defendants do not really address any of these cases other than the Ninth Circuit's decision in *Greater Los Angeles,* 812 F.2d 1103, which they argue does not provide for punitive damages despite using the term "full panoply of remedies" because punitive damages were not at issue there. *See* Defendants' Motion, pg 14. Although this fact makes the language in *Greater Los Angeles* dicta, the Court nevertheless finds that the term "full panoply of remedies" includes punitive damages. Under a

common understanding, "panoply" means everything available. *See e.g.* Webster's Ninth New Collegiate Dictionary, ("panoply: ... 3b a display of all appropriate appurtenances."). This understanding has likewise been reflected by the Supreme Court. *See e.g. International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 53, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979) (J. Blackmun, concurring) (Noting the general rule that courts can award the "full panoply" of remedies and stating that "[p]unitive damages, being one of these tools, thus are presumptively available for use in appropriate cases."); *see also Fitzgerald v. Green Valley Area Education,* 589 F.Supp. 1130 (S.D.Iowa 1984) (interpreting "full panoply" to encompass punitive damages). For the same reasons, the Court also finds that the "full spectrum" of remedies also includes punitive damages. Accordingly, the Court finds that the Ninth, Eighth, Eleventh, Fourth and Third Circuits have stated, in dicta, that punitive damages are available under § 504.

■ However, the question remains whether "appropriate relief" and "monetary damages" as stated in *Franklin* encompass punitive damages. The Court finds that "appropriate relief" by its very terms cannot be subject to blanket rules such as no punitive damages because what is appropriate very much depends on the facts of the case. Moreover, the Seventh and First Circuits have read "appropriate relief" to include punitive damages. *See Reich v. Cambridgeport Air Systems, Inc.,* 26 F.3d 1187, 1190–91 (1st Cir.1994); *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996). In addition, in the § 504 context, a court has found that:

Although Franklin did not address specifically the availability of punitive damages under Title IX, there is no adequate basis, in the *Franklin* opinion or elsewhere, for exempting punitive damages from the full spectrum of remedies generally available for violation of a federal statute such as Title IX or the Rehabilitation Act. First,

punitive damages doctrine has been accepted as 'settled law by nearly all state and federal courts, including [the Supreme Court] for more than a century.'

*DeLeo v. Stamford,* 919 F.Supp. 70, 74 (D.Conn.1995) (citations omitted). Lastly, Defendants have cited no case, nor has the Court found one including non-federal defendants that read appropriate relief as not including punitive damages. Consequently, the Court finds that the general rule in *Franklin* allowing the award of "appropriate relief" includes punitive damages.[3] Now that the Court has decided that the general rule in *Franklin* provides for punitive damages, the next question is whether the general rule applies.

### III. *Does Franklin apply to this case*

The Defendants argue that *Franklin* does not apply because of the Supreme Court's recent decision in *Lane v. Pena,* 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). In *Lane,* the issue was whether Congress in § 504 had waived the Federal Government's sovereign immunity concerning monetary damages. *Id.* at ——, 116 S.Ct. at 2095.

In arguing that Congress had waived its sovereign immunity, the Plaintiff in *Lane* relied on the "general rule" in *Franklin.* The Court rejected the argument. First, the Court reasoned that sovereign immunity places the Federal Government on an entirely different footing than private parties and thus the rule espoused in *Franklin* only applies to non-federal defendants. *Id.* at ——, 116 S.Ct. at 2098. Second, the Court found *Franklin* inapplicable because the remedies provision of § 504, § 505(a)(2):

brings this case outside the 'general rule' we discussed in *Franklin:* This is not a case in which 'a right of action exists to enforce a federal right and Congress is silent on the remedies'. Title IX, the statute at issue in *Franklin,* made no mention of available remedies. The Rehabilitation Act, by sharp contrast, contains a provision

---

**3.** The Court also finds that the Supreme Court's decision in *Franklin* finding that "monetary damages" could be awarded under Title IX also includes the possibility that punitive damages

could be awarded. *See Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996) (holding that Title IX provides for the awarding of punitive damages).

labeled "Remedies and attorney fees," § 505. *Id.* at ——, 116 S.Ct. at 2099. In reading § 505, moreover, the Court found that it did not "waive the Federal Government's sovereign immunity." *Id.* Focusing on this language, Defendants argue that *Franklin* is not applicable to § 505.

The Court has grave doubts that the Supreme Court intended the language to mean what Defendants assert. First, no court has previously read *Lane* as the Defendants ask the Court to do. For example, the case Defendants rely heavily upon, *Moreno v. Consolidated Rail Corporation,* 99 F.3d 782 (6th Cir.1996), did not rely on the language above in distinguishing *Franklin,* but distinguished it on the anemic grounds that " 'punitive damages were never mentioned" in *Franklin.* Indeed, applying Defendants' interpretation of *Lane* would have required the *Moreno* court to reach a contrary result with respect to the availability of compensatory damages.

Second, while the quotation above is troubling, it should not be isolated from its context. The Supreme Court in *Lane* distinguished *Franklin* because it did not concern federal defendants and sovereign immunity. *See Lane,* 518 U.S. at ——, 116 S.Ct. at 2098 ("[S]overeign immunity places the Federal Government on an entirely different footing than private parties. Petitioner's reliance on *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), then, is misplaced.") That is the thrust of the Supreme Court's holding. For instance, in the sentence preceding the passage relied upon by the Defendants, the Court stated that:

> Lane's 'equal treatment' argument falters as well on a point previously discussed: Section 505(a)(2) itself indicates congressional intent to treat federal executive agencies *differently* from other § 504(a) defendants for purposes of remedies.

*Lane,* 518 U.S. at ——, 116 S.Ct. at 2099. Therefore, only because § 505(a)(2) was silent on immunity, was the general rule in *Franklin* found inapplicable to *Lane.* In sum, the Supreme Court confined its ruling in concurrence with the government that " 'where a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' [an obvious reference to the *Franklin* standard] but only those for which sovereign immunity has been expressly waived." *Id.*

Moreover, in the sentence following the passage relied upon by the Defendants, the Court concluded that:

> Congress has thus spoken to the question of remedies in § 505(a)(2), the only remedies provision directly addressed to § 504 violations, and has done so in a way that suggests that it did not in fact intend to waive the Federal Government's sovereign immunity against monetary damages awards for executive agencies' violations of § 504(a).

*Id.* As evident from this quotation, the only relevance of § 505(a)(2) to the Court in *Lane* was whether it contained a waiver of sovereign immunity. Accordingly, it is not relevant to the issue of availability of punitive damages under § 504.

Third, § 504's remedy provision does not substantively address the remedies available so as to take it out of *Franklin.* Rather, § 505 merely states that the remedies available shall be those found in Title VI, an implied cause of action. Such lack of guidance is tantamount to Congressional "silen[ce] on the question of remedies."

**A.** *If Franklin does apply, Section 505 gives courts the power to award punitive damages*

■ If the general rule in *Franklin* applies, punitive damages may be awarded if: (1) there is no clear direction to the contrary by Congress; and (2) such relief would be appropriate. *Franklin,* 503 U.S. 60, 71, 112 S.Ct. 1028, 1035–36; *see also Moreno v. Consolidated Rail Corporation,* 99 F.3d 782, 789 (6th Cir.1996) (en banc).

*1. Clear direction*

Here, Congress has not sent a clear direction that it does not want courts to award punitive damages to litigants in § 504 cases. To the contrary, the Congress has confirmed the importance of awarding damages against

**1150**

states when they violate § 504. The fount of this message came in 1985 when the Supreme Court decided that money damages for a § 504 violation could not be collected against a State because of the Eleventh Amendment. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The very next year, in an atypical show of unity, Congress passed the Civil Rights Remedies Equalization Act which: (1) abrogated a State's Eleventh Amendment immunity in § 504 actions; and (2) held that litigants shall have the same remedies against the state that they would have against private parties.[4] *See* 42 U.S.C. § 2000d–7. This law cannot be seen as anything but a clear message from Congress that money damages are vital to the workings of § 504.

Relying on the Sixth Circuit's en banc decision in *Moreno,* however, the Defendants argue that Congress has provided "clear direction" that punitive damages should not be awarded under § 504. *See Moreno v. Consolidated Rail Corporation,* 99 F.3d 782 (6th Cir.1996) (en banc) (holding that punitive damages could not be recovered under § 504.) In reaching this result, the Sixth Circuit reasoned that since punitive damages under § 504 or Title VI "had never been awarded" before 1992, Congress' failure to remedy this situation equals sending a clear direction that punitive damages should not be allowed under § 504. *Id.* at 789–90. To begin with, the Sixth Circuit was not absolutely accurate in its survey of the pre–1992 case law.[5] Second, as the previous makes clear, the picture of punitive damages was not so clear the Congress' silence should be read as a "clear direction." Lastly, even if

the Sixth Circuit's reasoning controls—that congressional failure to remedy can be viewed as an affirmation of the status quo—then Congress' failure to disturb *Franklin* in the five years since its decision should be viewed as an affirmation of it and its allowance of punitive damages in certain situations. For these reasons, the Court finds *Moreno* unpersuasive as to the "clear direction" tenet of *Franklin.*

### 2. Are punitive damages an appropriate remedy under § 504

The second query in *Franklin* is whether punitive damages under § 504 would be appropriate. Defendants again rely on *Moreno* to argue that punitive damages would not be appropriate.

In *Moreno,* the Sixth Circuit found that punitive damages would not be appropriate under § 504 because: (1) "it would be highly anomalous to let a plaintiff asserting an implied right of action under § 504 recover more in punitive damages than could be recovered by a plaintiff asserting the statutory remedy created for § 501"; (2) other ways exist to punish those who violate § 504; and (3) adding punitive damages "would expand § 504 beyond all manageable bounds." *Id.* at 791–92.

The first rationale does not apply here because the cap on punitive damages in § 501 referred to in *Moreno* does not apply to actions brought against the state. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency, or political subdivision)"). Moreover, even if it did ap-

---

4. Defendants argue that this section's failure to explicitly mention punitive damages precludes it from abrogating a State's Eleventh Amendment immunity as to those damages. The Court rejects this argument. First, under this logic, the section's failure to mention compensatory damages makes it an ineffective abrogation of those type of damages. Second, the cases relied upon by Defendants all pertain to congressional waiver of federal immunity and thus are inapposite. *See e.g. Matter of Sparkman,* 703 F.2d 1097, 1099 (9th Cir.1983). In fact, no case in the Eleventh Amendment context has set forth such a restrictive rule.

5. The Sixth Circuit language concerning the award of punitive damages before 1992 ignores situations where punitives would have been awarded if the circumstances supported such relief. *See e.g. Fitzgerald v. Green Valley Area Education Agency,* 589 F.Supp. 1130, 1138 (S.D.Iowa 1984) ("Although punitive damages are presumably available under § 504, the Court finds that the assessment of such damages against defendant is not justified under the facts of this case"); *Nelson v. Thornburgh,* 567 F.Supp. 369 (E.D.Pa.1983) (full panoply of remedies available under § 504 but cannot be imposed against State because of the Eleventh Amendment).

ply, any inconsistency between Section 501 and Section 504 is more akin to the norm, than to the anomalous. For instance, under the Civil Rights Remedies Equalization Act, Congress explicitly abrogated a State's Eleventh Amendment Immunity in § 504 cases, but did not explicitly abrogate a State's immunity under § 501. As evident, Congress has intended to treat these two provisions differently, thus it is not anomalous that one section could potentially provide greater punitive damages than the other. After all, if *Moreno* is followed, the two sections would also have different remedies. Accordingly, the Court rejects the first factor relied on by *Moreno* in finding that punitive damages would not be appropriate.[6]

The second argument also lacks merit. Certainly, other ways exist to punish all violators of the civil rights laws such as injunctions, consent decrees, EEOC suits; yet the Supreme Court has found the implied remedy of punitive damages appropriate in other areas of civil rights law, like § 1983 actions. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Granted that unlike § 1983, § 505 allows for the rescission of federal funding in response to a § 504 violation, but such an option does nothing for the person who suffered the indignities of discrimination. Thus, punitive damages should not be rejected because of other options already available, but should be seen as another weapon in the fight against discrimination.

For this reason and more, the Sixth Circuit's rationale that punitive damages would make § 504 unmanageable should also be rejected. *See* 99 F.3d at 792. It should be rejected because in reaching the conclusion that punitive damages would make § 504 unmanageable, the Sixth Circuit seems to rely on the following syllogism. The objective of § 504 is to prevent discrimination against the

handicapped. *Id.* Discrimination against the handicapped occurs mostly out of thoughtlessness. *Id.* Punitive damages are not necessary to combat thoughtlessness. *Id.* Allowing punitive damages, therefore, would expand § 504 beyond all manageable bounds. *Id.* Assuming as true the Sixth Circuit's first three premises, the Court fails to see how the conclusion—allowing punitive damages would expand § 504 beyond all manageable bounds—follows it. For instance, what is the nexus between the assumption that discrimination against the handicapped occurs mostly out of thoughtlessness and the conclusion that the availability of punitive damages would make § 504 unmanageable. To this Court, the nexus seems to be a fear by the Sixth Circuit that courts would award punitive damages in cases involving thoughtlessness. *See Moreno,* 99 F.3d at 792. Such a fear, however, is entirely unjustified because punitive damages have never been awarded for thoughtlessness. Moreover, other civil right statutes such as Title VII and § 1983 have not become unmanageable simply because they allow for the recovery of punitive damages. *See* 42 U.S.C. § 1981a(a)(1); *Smith,* 461 U.S. 30, 103 S.Ct. 1625.

■ Not finding any of the rationales proffered in *Moreno* convincing, this Court finds that punitive damages may be appropriate in certain § 504 suits. For example, in a scenario where a city did not allow handicapped people to run for public office, punitive damages may be appropriate because such discrimination cannot be tolerated and because many handicapped people would suffer no compensatory damages. Instead of creating a blanket rule, therefore, this Court holds that the propriety of punitive damages in § 504 suits should be decided on a case-by-case basis, as they are in tort suits. *See*

**6.** Moreover, even if the rule does create an anomaly (which the Court denies), anomalies pervade civil rights law. *See e.g. Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (creating the rule that suing state employees in their official capacity for injunctive relief does not violate the Eleventh Amendment). For instance, a person whose Equal Protection rights have been violated by a State actor cannot sue for monetary damages in federal court pursuant

to that constitutional right (i.e., a § 1983 suit), but, in certain cases, can pursue such a suit for monetary damages under certain federal statutory rights. *Compare Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that § 1983 does not abrogate State's Eleventh Amendment immunity) *with* 42 U.S.C. § 2000d–7 (abrogating Eleventh Amendment immunity for certain statutorily protected rights).

*Kedra v. Nazareth Hospital,* 868 F.Supp. 733 (E.D.Pa.1994) (finding that punitive damages should be allowed because, *inter alia,* " § 504 claims have been compared to tort claims"); *see also Pandazides v. Virginia Board of Education,* 13 F.3d 823 (4th Cir.1994). Thus, under *Franklin,* the Court finds that punitive damages may be appropriate relief in certain § 504 cases.

### B. *The relationship between Title IX and the Rehabilitation Act also supports a finding of punitive damages*

The holding in *Franklin* that monetary damages are recoverable under Title IX directly relates to the remedies allowed under § 504 because both Title IX and § 504 are based on Title VI. In discussing Title IX, the Supreme Court has stated that:

> Title IX was patterned after Title VI of the Civil Rights Act of 1964.... Neither statute expressly mentions a private remedy for the person excluded from participation in a federally funded program. The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years.

*Cannon v. University of Chicago,* 441 U.S. 677, 694–96, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560. Section 505 also mirrors Title VI. *See* 29 U.S.C. § 794a(a)(1) ("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available ... under section 794 of this title".) Consequently, the remedies of § 504 mirror those of Title IX. Under Title IX, "monetary damages" are available, thus such damages should also be available under section 504.

The Third, Eighth, and the Eleventh Circuits have followed similar reasoning in finding that the "full spectrum" of remedies are allowed under § 504. *See Rodgers v. Magnet Cove Public Schools,* 34 F.3d 642, 644 (8th Cir.1994) ("The anti-discrimination provisions of Section 504 and of Title IX both largely repeat the language of Title VI. Therefore, we believe that the Court's holding on Title IX in Franklin applies equally to Title VI and Section 504 cases."); *Waldrop v. Southern Company Services, Inc.,* 24 F.3d 152, 156–7 (11th Cir.1994) (same); *W.B. v. Matula,* 67 F.3d 484, 494 (3rd Cir.) (same). Accordingly, the Court finds that punitive damages are recoverable under § 504.

Therefore, consistent with: (1) the Ninth Circuit's holding that a "full panoply of remedies" are available under § 504, (2) the general rule in *Franklin* that courts have the power to award all "appropriate relief in a cognizable cause of action brought pursuant to a federal statute", (3) the majority of cases since *Franklin* that have held that punitive damages are available, and (4) Congress' intent embodied in the Civil Rights Remedies Equalization law that money damages be available for § 504; the Court DENIES Defendant's motion for partial summary judgment finding that punitive damages are available under § 504.

Now that the Court has ruled on the narrow legal question of whether punitive damages can be recovered under § 504, it would be appropriate for the parties to address the broader punitive damages issue by way of summary judgment motion.

### *CONCLUSION*

For the foregoing reasons, the Court DENIES Defendants' Motion for partial summary judgment.

IT IS SO ORDERED.