**James A. SAYLOR and Elizabeth W. Saylor, h/w and the National Federation of the Blind of Pennsylvania**

v.

**Tom RIDGE, Governor of the Commonwealth of Pennsylvania, the Pennsylvania State Police, Pennsylvania State Police Office of Chief Counsel and Office of General Counsel.**

**Civil Action No. 97–CV–1445.**

United States District Court,
E.D. Pennsylvania.

Jan. 8, 1998.

Jacqueline M. Vigilante, Stevens Vigilante and Witmer, Media, PA, for Plaintiffs.

Howard R. Flaxman, Jeffrey P. Scarpello, Jacqueline M. Woolley, Fox, Rothchild, O'Brien & Frankel, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action has been brought before the Court on Defendants' Motion to Dismiss portions of Plaintiff's complaint. Following careful consideration of the pleadings and for the reasons set forth in the following paragraphs, the motion shall be granted in part.

## HISTORY OF THE CASE

Thomas Saylor has been employed as a staff attorney for the Commonwealth of Pennsylvania since July, 1989 assigned to the Pennsylvania State Police. Mr. Saylor is completely blind in his left eye and is legally blind in his right eye, as the result of bilateral high myopia, retinal detachments and hypoperfusion of the optic nerve and retina. (Pl's Complaint, ¶ s 1–2). Despite his significant visual impairments, plaintiff avers that he is able to perform all of the essential functions of his job, albeit with the assistance of specialized computers and equipment which, among other things, enlarge print to the point where he can see them to read and perform legal research and prepare legal briefs and memoranda. (Complaint, ¶ s 10, 15).

According to the allegations in the complaint, in April, 1993 and again in February, 1995, plaintiff made a written request to the Commonwealth for a "reasonable accommodation" within the meaning of the Americans with Disabilities Act, 42 U.S.C. Section 12101, et seq. in the form of the specialized print-voice converter and computer equipment and printer and for a CD–ROM version of the Pennsylvania Administrative Code and rules. The Commonwealth, however, did not provide Mr. Saylor with the specialized voice converter and computer equipment until July, 1994 and has yet to respond to his request for the Administrative rules and regulations on CD–ROM. In addition, the computer equipment which was ultimately provided was lacking in several respects.[1]

Plaintiff further alleges that in the intervening period between the time he requested the computer equipment and the time it was provided, he was forced to work at home on his own equipment with his wife providing secretarial support. (Complaint, ¶ s 26–27, 29–32). Although plaintiff advised his employer that he was working at home and the reason why, the Commonwealth refused to pay him for those days on which he worked

---

1. Specifically, plaintiff alleges the Commonwealth provided him with a 14-inch color monitor, which was not large enough to allow practical use of the specialized large print program which plaintiff needed. Mr. Saylor's visual condition requires the contrast of a black and white—not a color screen and the computer did not include a printer which was needed to print the enlarged text. In addition, no workstation table or desk was supplied at which the plaintiff could work. (Complaint, ¶ 25(a)—(d)).

at home and charged this time against his annual leave. (Complaint, ¶ 28).

Plaintiff submits that as a result of its refusal to reasonably accommodate him in a timely fashion, his job was rendered more difficult and he is less competitive and appears less competent than his sighted counterparts, and he is unfairly being held to the same standards as his co-workers without appropriate accommodation. As a result, plaintiff avers he has suffered undue humiliation, embarrassment, concern, and undue physical, emotional and mental stress. (Complaint, ¶ 33).

Mr. Saylor further complains that because of the inherent difficulties which he has in performing his job without reasonable accommodation, the Commonwealth has improperly refused to promote him and to provide him with appropriate pay increases. (Complaint, ¶ s 34–48). Finally, according to plaintiff, the Commonwealth has retaliated against him for making complaints pursuant to the Americans with Disabilities Act by unreasonably criticizing his productivity, negatively evaluating his performance and refusing to promote him. (Complaint, ¶ s 49–58).

Based upon these allegations, plaintiff seeks relief under Titles I and II of the ADA, the Rehabilitation Act of 1973, 29 U.S.C. Section 701, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq., the Pennsylvania Human Relations Act, 43 P.S. Section 951, et seq., and for his wife's loss of consortium under Pennsylvania common law. In addition, as a member of the National Federation for the Blind of Pennsylvania, plaintiff also seeks a court order against defendants requiring them "to promote the hiring and advancement of individuals who are visually impaired." (Complaint, ¶ s 77–81).

In response, defendants have filed this motion to dismiss large portions of plaintiffs' complaint. Plaintiffs now agree to the dismissal of their claims under Title VII and the Pennsylvania Human Relations Act and the loss of consortium claim of Mrs. Saylor. Accordingly, those claims shall be dismissed

and Counts III, IV and that part of Count V which avers loss of consortium stricken.

## STANDARDS GOVERNING MOTIONS TO DISMISS

The law is well-settled that in considering a motion to dismiss a pleading under Fed. R.Civ.P. 12(b)(6), all of the allegations contained in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249–251, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3rd Cir.1989). The district courts may grant a motion to dismiss for failure to state a claim upon which relief may be granted only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 66 (3rd Cir.1986).

## DISCUSSION

### A. Statute of Limitations

■ Among the grounds advanced in their motion, defendants move to dismiss plaintiff's claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., ("RHA") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA") as time-barred. Normally, parties will not learn that a limitations period has expired until discovery and thus a Rule 56 motion for summary judgment is generally the proper vehicle for dismissal on this basis. *Jackson v. Nicoletti*, 875 F.Supp. 1107, 1108 (E.D.Pa.1994). As this court has previously observed however, if it is clear from the face of the pleadings that a statute of limitations has expired, dismissal under Rule 12(b)(6) is appropriate. *Clark v. Sears, Roebuck & Co.*, 816 F.Supp. 1064, 1067 (E.D.Pa.1993).

■ Under Title I of the ADA, an employer is prohibited from discriminating against a qualified individual with a disability[2] with

---

**2.** A "disability" is a physical or mental impairment that substantially limits one or more of the

major life activities of such individual, a record of such an impairment or being regarded as

regard to job application procedures, hiring, advancement, discharge, employee compensation, job training or other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). A plaintiff alleging a violation of Title I must exhaust administrative remedies available through the Equal Employment Opportunity Commission ("EEOC") before instituting a private lawsuit. *Bracciale v. City of Philadelphia,* 1997 WL 672263 (E.D.Pa.1997); 42 U.S.C. § 2000e–5(e), (f)(1).

■ Title II of the ADA proscribes the exclusion of any qualified individual with a disability from participation in or receipt of the benefits of the services, programs, or activities of a public entity and makes it unlawful for any such entity to discriminate against disabled persons. 42 U.S.C. § 12132. Unlike Title I, there is no requirement that administrative remedies first be exhausted before suit may be commenced. *Bracciale,* at *8, citing *inter alia, Winfrey v. City of Chicago,* 957 F.Supp. 1014, 1022 (N.D.Ill. 1997); *Roe v. County Comm'n of Monongalia County,* 926 F.Supp. 74, 77 (N.D.W.Va. 1996).

In turn, the RHA provides in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by

any Executive agency or by the United States Postal Service....

29 U.S.C. § 794(a). "Program or activity" is defined as all of the operations of, *inter alia,* a department, agency, special purpose district or other instrumentality of a State or of a local government. 29 U.S.C. § 794(b)(1)(A). This statute, too, has been interpreted to encompass claims for employment discrimination and, where the relief sought is by a public employee under Section 794 (also known by its original designation— § 504), as requiring exhaustion of those administrative remedies provided under Title VII to the Civil Rights Act. *See, Spence v. Straw,* 54 F.3d 196, 201 (3rd Cir.1995); *Bracciale, supra,* at *4–*5; *Santiago v. Temple University,* 739 F.Supp. 974 (E.D.Pa. 1990), aff'd, 928 F.2d 396 (3rd Cir.1991); *Desper v. Montgomery County,* 727 F.Supp. 959 (E.D.Pa.1990). *Also see: Jeremy H. v. Mount Lebanon School District,* 95 F.3d 272 (3rd Cir.1996).[3]

■ Neither the RHA nor the ADA, however, include a statute of limitations. The Courts have long held that the most closely analogous state statute of limitations shall apply to determine the timeliness of claims made under statutes to which no prescribed limitations period exists. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Morse v. University of Vermont,* 973 F.2d 122, 125 (2nd Cir.1992). As a general principle, this is usually the state statute of limitations applicable to personal injury actions. *Id.; Piquard v. City of East Peoria,* 887 F.Supp. 1106 (C.D.Ill.1995); *Noel v. Cornell University Medical College,*

---

having such an impairment. 42 U.S.C. § 12102(2); 29 CFR § 1630.2. A "qualified individual with a disability" is a term which is differently, although similarly defined in each title. Under Title I, the term means:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires....

42 U.S.C. § 12111(8).

Under Title II, however, "qualified individual with a disability" means:

> an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or

the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

3. As there is still some question as to whether the exhaustion of remedies requirement applies to non-federal employees such as the plaintiff here, in an abundance of caution and deference to the standards to be applied to 12(b)(6) motions, we give plaintiff the benefit of the doubt and shall not hold his apparent failure to exhaust his remedies under Title II against him. Accordingly, we shall address the issue of the statute of limitations as to plaintiff's Title II claims. *See, e.g.: Ethridge v. State of Alabama,* 847 F.Supp. 903, 906–907 (M.D.Ala.1993).

853 F.Supp. 93 (S.D.N.Y.1994). In this district, it has repeatedly been held that Pennsylvania's two year statute of limitations for personal injury claims governs claims under both the Rehabilitation Act and Title II of the ADA. *Benedum v. Franklin Township Recycling Center,* 1996 WL 679402, *6 (W.D.Pa.1996); *Toney v. U.S. Healthcare, Inc.,* 840 F.Supp. 357, 359 (E.D.Pa.1993), *aff'd,* 37 F.3d 1489 (3rd Cir.1994); 42 Pa.C.S. Section 5524(2). *See Also: Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

■ While state law determines the period of limitations, federal law determines accrual of a cause of action. *Jackson v. Nicoletti, supra,* 875 F.Supp. at 1109; *Long v. Board of Education of City of Philadelphia,* 812 F.Supp. 525, 531 (E.D.Pa.), *aff'd w/o opinion,* 8 F.3d 811 (3rd Cir.1993). A federal discrimination claim accrues and the applicable statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Toney v. U.S. Healthcare,* 840 F.Supp. at 359, quoting *Morse v. University of Vermont,* 973 F.2d 122, 125 (2nd Cir.1992). In determining the accrual date of a discrimination claim, it is therefore appropriate to focus on when the discriminatory act occurs, not when the effect of that act becomes painful. *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)

In this case, Mr. Saylor presents several claims under the RHA and Title II of the ADA that extend from May, 1992 through February 7, 1995 and, for the reasons set forth above, we find these claims to be subject to a two-year statute of limitations. Plaintiffs, however, contend that their claims for defendants' refusal to promote, for discrimination in the terms and conditions of his employment and retaliation are all continuing violations which have pervaded Mr. Saylor's work environment on a daily basis since the first discriminatory act occurred. As such, plaintiffs submit, these claims were timely filed.

■ The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). In most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period and in those instances the court will grant relief for the earlier related acts that would otherwise be time barred. *287 Corporate Center Associates v. Township of Bridgewater,* 101 F.3d 320, 324 (3rd Cir.1996); *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America,* 927 F.2d 1283, 1295 (3rd Cir.1991); *Jeffery and Mary Y. v. St. Mary's Area School District,* 967 F.Supp. 852, 855 (W.D.Pa.1997).

■ There are two kinds of continuing violations: serial violations and systemic violations. A serial violation is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong. *Walsh v. United Parcel Service,* 1994 WL 801503 (W.D.Pa.1994), citing *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990). In the employment setting, a serial violation occurs when an employer covertly follows a practice of discrimination over a period of time. In such a case, the plaintiff can only realize that he/she is a victim of discrimination after a series of discrete acts has occurred. The limitations period begins to run when the plaintiff gains such insight. *Piquard v. City of East Peoria, supra,* 887 F.Supp. at 1113. A systemic violation, on the other hand, need not involve an identifiable discrete act of discrimination transpiring within the limitations period, but rather has its roots in a discriminatory policy or practice. So long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint. *Walsh, supra,* at *2. *See Also: Selan* at 565.

Here, plaintiff seeks relief for a number of events which occurred between June, 1991

and March, 1996. Specifically, plaintiff contends that defendants unlawfully discriminated against him because of his visual impairments by:

1) Ignoring his June, 1991 request for promotion from Attorney I to Attorney II until May, 1992 and refusing to treat him in the same manner as sighted attorneys by making that promotion retroactive to August 1, 1991. (Pl's Complaint, ¶ s34–38).

2) Denying him out-of-class pay and refusing to promote him from August 1, 1992 through February, 1993 and October 1, 1995 to the present when he performed additional duties and responsibilities as the Acting Supervising Attorney of the Philadelphia District Office. (Pl's Complaint, ¶ s 39–48).

3) Ignoring his request for a reasonable accommodation in the form of specialized computer equipment from April 13, 1993 through June 6, 1994, during which time plaintiff filed complaints with the Pennsylvania Human Relations Commission and the U.S. Equal Employment Opportunity Commission. (Pl's Complaint, ¶ s16–19).

4) Failing to provide him with the proper computer equipment to meet the standards for a reasonable accommodation and to provide him with instructions in the use of the specialized equipment until September, 1994 and refusing to compensate him and his wife for the time that he was compelled to work at home. (Pl's Complaint, ¶ s22–29).

5) Continuing to ignore the requests which he made in December, 1994 and on February 7, 1995 for a reasonable accommodation in the form of the Pennsylvania Administrative Code and Rules on CD–ROM. (Pl's Complaint, ¶ s29–33).

■ Initially, we note that nowhere in plaintiffs' complaint do they allege that the defendants have a policy or practice of discriminating against disabled or handicapped employees. Thus, plaintiffs cannot be afforded any relief from the statute of limitations under a systemic violation theory.

■ Likewise, as plaintiffs clearly knew or had reason to know in May, 1992 that Mr. Saylor's promotion from Attorney I to Attorney II would not be retroactive to August, 1991 and knew or should have known he was being denied a promotion and out-of-class pay for that period between August 1, 1992 through February, 1993, we find that no serial continuing violation occurred such as would render their claims for these violations timely when filed on February 27, 1997. We reach the same conclusion with respect to plaintiffs' claims that Mr. Saylor's requests for a reasonable accommodation in the form of the specialized computer equipment and the Commonwealth's refusal to compensate plaintiffs' for the work which both of them performed at home. Indeed, defendants' denial of these requests was made manifest in September, 1994. Accordingly, to the extent that each of these claims has been raised under Title II of the ADA and the RHA, they are stricken as barred by the two year statute of limitations.

■ Insofar as defendants have yet to address plaintiff's requests for the CD–ROM and particularly in view of the nearly fifteen months that it took defendants to address the request for the computer equipment, we find that plaintiffs' have sufficiently pled a serial continuing violation and that their discrimination claim based upon this request has been timely filed. We further find plaintiffs' retaliation claims set forth in paragraphs 49–59 to be within the statute of limitations given that they arise out of continuous conduct occurring since September, 1995. Thus, these claims, too, shall be permitted to go forward.

### B. *Applicability of Title II to Employment Claims*

■ Defendants alternatively argue that Plaintiffs' claims under Title II must be dismissed for the reason that Title II does not apply to claims for discrimination in employment. Specifically, Title II states, in pertinent part:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be ex-

cluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

There is indeed a split among the authorities as to whether Title II applies to discrimination in employment, with some courts holding that no cause of action will lie under Title II for an employment discrimination claim and others concluding that Title II does create such a cause of action. *See, e.g.: Dominguez v. City of Council Bluffs, Iowa,* 974 F.Supp. 732 (S.D.Iowa 1997); *Decker v. University of Houston,* 970 F.Supp. 575 (S.D.Tex.1997); *Bledsoe v. Palm Beach Soil and Water Conservation District,* 942 F.Supp. 1439 (S.D.Fla.1996). While the Third Circuit has yet to address this question, at least two judges in this district have found that a claim for employment discrimination does lie under Title II. We are inclined to follow the reasoning and holdings of our brethren which also appears to be the view followed by the majority of courts nationwide which have confronted this question. *See: Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522 (11th Cir.1997); *Doe v. University of Maryland Medical System Corp.,* 50 F.3d 1261 (4th Cir.1995); *Smith v. Barton,* 914 F.2d 1330 (9th Cir.1990), cert. denied, 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *Bracciale v. City of Philadelphia,* 1997 WL 672263 (E.D.Pa.1997); *Hernandez v. City of Hartford,* 959 F.Supp. 125 (D.Conn. 1997); *Graboski v. Guiliani,* 937 F.Supp. 258 (S.D.N.Y.1996); *Wagner v. Texas A & M University,* 939 F.Supp. 1297 (S.D.Tex.1996); *Silk v. City of Chicago,* 1996 WL 312074 (N.D.Ill.1996); *Bruton v. SEPTA,* 1994 WL 470277 (E.D.Pa.1994); *Ethridge v. Alabama,* 847 F.Supp. 903 (M.D.Ala.1993).

So saying, we conclude that Title II does apply to plaintiffs' claims here and, as we are bound to accept all of the allegations in the complaint as true and give plaintiffs the benefit of all favorable inferences which can be drawn therefrom in deciding a motion to dismiss, plaintiffs' remaining Title II claims shall be permitted to proceed. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3rd Cir.1991).

## C. *Plaintiffs' Claims Against Governor Ridge*

Defendants next assert that plaintiffs' claims against Governor Ridge should be dismissed as there is no individual liability under the ADA and because plaintiffs' failed to exhaust their administrative remedies as against him.

This Court has previously had occasion to address the issue of whether or not suit will lie against an employer in his or her individual and official capacity. In *Clarke v. Whitney,* 907 F.Supp. 893 (E.D.Pa.1995), we found that there is no individual liability under the ADA for the same reason that there is no individual liability under Title VII—both statutes were intended to create only respondeat superior liability. *Id.* at 895. Similarly, because a suit against a defendant in his or her official capacity is nothing more than suit against the defendant's employing entity, dismissal of an individual defendant in their official capacity is appropriate. *Id.,* citing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

In this case, the only allegation specifically directed to Governor Ridge is found in paragraph 7 of the complaint wherein plaintiffs contend that he, along with the Commonwealth of Pennsylvania, the Office of Chief Counsel and the Office of General Counsel are plaintiff's employer and are responsible for decisions relating to plaintiff's employment. Clearly, this allegation is simply another way to sue the plaintiff's employing entity. Governor Ridge is therefore not a proper party to this lawsuit and the motion to dismiss him shall be granted. *See Also: Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3rd Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Harper v. Casey,* 1996 WL 363913 (E.D.Pa.1996); *Doe v. William Shapiro, Esq., P.C.,* 852 F.Supp. 1246 (E.D.Pa.1994).

## D. *Requirement of an Ultimate Employment Decision*

Defendants next contend that plaintiffs' failure to promote and retaliation claims under the ADA and the RHA must be dismissed because none of the defendants' al-

leged discriminatory actions constituted ultimate employment decisions.

In support of this argument, defendants cite to *Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir.1997) and *Dollis v. Rubin,* 77 F.3d 777 (5th Cir.1995), wherein the Fifth Circuit Court of Appeals reasoned that the retaliation provision of "Title VII was designed to address ultimate employment decisions and was not meant to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Mattern* at 707; *Dollis* at 781–782. In finding that judgment as a matter of law was properly entered in favor of the defendant employers in both cases, the Fifth Circuit went on to find that actions such as the denial of a desk audit (which arguably could have restricted plaintiff's promotion opportunities), verbal threats of termination, criticism, reprimands, missed pay increases, receiving false information about aspects of employment and being placed on "final warning" did not constitute the kind of ultimate adverse employment actions contemplated by Title VII because these actions had only a tangential effect on a possible future ultimate employment decision. Rather, only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting and compensating are actionable under Title VII. *Mattern,* at 707. *See Also: Shafer v. Dallas County Hospital District,* 1997 WL 667933 at *4 (N.D.Tex.1997).

It is true that, in the Third Circuit, unlawful retaliation claims under the ADA are analyzed under the same framework as is employed for retaliation claims under Title VII. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3rd Cir.1997). However, defendants have not directed our attention to nor has our independent research revealed any authority in this Circuit to suggest that the Fifth Circuit's rationale in *Mattern* and *Dollis* applies with equal force in this circuit to retaliation claims brought under either Title VII, the ADA or the RHA.[4]

Rather, the Third Circuit has consistently held that for a prima facie case of retaliation to be stated under both Title

VII and the ADA, the plaintiff must show only: (1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse, supra,* at 500; *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3rd Cir.1997); *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3rd Cir. 1991); *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3rd Cir.1989). To establish a violation of the Rehabilitation Act in this Circuit, a plaintiff need only prove: (1) that he or she is a handicapped individual under the Act; (2) that he was otherwise qualified for the position sought; (3) that he was excluded from the position sought solely by reason of his handicap; and (4) that the employer, program or activity at issue received federal financial assistance. *Wagner by Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1009 (3rd Cir.1995); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3rd Cir.1991); *Toney v. U.S. Healthcare, Inc., supra.* Thus, the Third Circuit has not required that an employer's adverse action must be an "ultimate" one as defined by the *Mattern* and *Dollis* courts and as we are not bound by the Fifth Circuit's decisions, we decline to adopt the Fifth Circuit's definition of "adverse employment action." *See Also: Deavenport v. MCI Telecommunications Corp.,* 973 F.Supp. 1221 (D.Colo.1997). Accordingly, defendants' motion for dismissal on this basis is denied and plaintiffs' retaliation claims under the ADA and the RHA shall also be permitted to proceed.

### E. *Mrs. Saylor's Claim for Unjust Enrichment*

Defendants next move to dismiss wife-plaintiff's claim that she should have been compensated for the secretarial services which she provided to her husband while he worked at home. Specifically, defendants contend that this court lacks the requisite subject matter jurisdiction to entertain this claim and, alternatively, that this claim has not been sufficiently pled.

---

**4.** Indeed, both *Mattern* and *Dollis* themselves give no clues as to whether the rationale em-

ployed therein would also apply to cases brought in that Circuit under either the ADA or the RHA.

In light of our holding in Subsection A of this Memorandum that plaintiffs knew or should have known of the Commonwealth's refusal to compensate them for the work which they performed at home by September, 1994 and that these claims are therefore barred by the statute of limitations, defendants' motion to dismiss this claim is granted.

### F. Standing of National Federation of the Blind

Defendants next move to dismiss the National Federation of the Blind of Pennsylvania as a party defendant as to the Title VII and ADA Title I claims on the grounds that the Federation does not have sufficient standing given its failure to exhaust its administrative remedies. As previously noted, the plaintiffs have stipulated to the dismissal of their claims under Title VII. Likewise, at subsection B of their Memorandum of Law in Response to Defendants' Motion to Dismiss, plaintiffs have conceded that they were required to exhaust their administrative remedies under Title I of the ADA. Accordingly, these claims are dismissed in their entirety.

### G. Availability of Punitive Damages under the RHA and ADA

■ Finally, defendants seek the dismissal of plaintiffs' claim for punitive damages in Count II of their Complaint. It is defendants' assertion that punitive damages are not recoverable under the RHA or under Title II of the ADA. In support of this argument, defendants cite to a Sixth Circuit case, *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir.1996).

Again, defendants raise an issue which neither the Third Circuit nor the U.S. Supreme Court have resolved. Nevertheless, we find some guidance in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), wherein the Supreme Court, holding that monetary damages are an available remedy in actions to enforce Title IX, observed: "[A]lthough we examine the text and history of a statute to determine whether Congress intended to create a right of action, we presume the availability of all appropriate remedies unless

Congress has expressly indicated otherwise." 503 U.S. at 66, 112 S.Ct. at 1032. In like fashion, the Third Circuit in *W.B. v. Matula*, 67 F.3d 484 (3rd Cir.1995) made the same observation in support of its finding that injunctive relief and monetary damages are recoverable under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Since then, the Third Circuit has concluded that monetary damages are also permitted to be recovered under the ADA because, "the remedies, procedures and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." *Jeremy H. by Hunter v. Mount Lebanon School District*, 95 F.3d 272, 279 (3rd Cir.1996).

It is true that until 1994, a majority of cases held that punitive damages were not available under § 504. Since then, however, the majority of courts seem to have shifted, holding that punitive damages are permitted under § 504. *Burns–Vidlak v. Chandler*, 980 F.Supp. 1144, 1997 WL 641109 at *2 (D.Hawai'i 1997), citing *Todd v. Elkins*, 105 F.3d 663 (8th Cir.1997); *Kilroy v. Husson College*, 959 F.Supp. 22 (D.Me.1997); *Hernandez v. Hartford*, 959 F.Supp. 125 (D.Conn.1997); *Garrett v. Chicago School Reform Board*, 1996 WL 411319 (N.D.Ill. 1996); *DeLeo v. Stamford*, 919 F.Supp. 70, 75 (D.Conn.1995); *Zaffino v. Surles*, 1995 WL 146207 (S.D.N.Y.1995) and *Simenson v. Hoffman*, 1995 WL 631804 (N.D.Ill.1995). *See Also: Mild v. Mehlville Public School District*, 1995 WL 819138 (E.D.Mo.1995).

Moreover, those courts in this district which have considered whether to permit punitive damages claims to go forward under the RHA and the ADA, have answered these questions in the affirmative. *Kedra v. Nazareth Hospital*, 868 F.Supp. 733, 740 (E.D.Pa. 1994); *Doe v. William Shapiro, Esquire*, 852 F.Supp. 1246, 1255 (E.D.Pa.1994). In reviewing both the ADA and the RHA, we cannot find any express indication from Congress that it intended to prohibit the recovery of punitive damages under these Acts. We are therefore inclined to follow *Kedra* and *Doe* and conclude that plaintiffs' punitive

damages claims under Count II of their complaint should not be stricken at this point in the proceedings.

## CONCLUSION

For all of the reasons set forth above, defendants' motion to dismiss shall be granted in part and denied in part. An appropriate order follows.

## ORDER

AND NOW, this 8th day of January, 1998, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint and for the reasons set forth in the preceding Memorandum, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART, Counts III, IV and V of Plaintiffs' Complaint are DISMISSED, Plaintiffs' claims against Governor Ridge are DISMISSED, the claims of Plaintiff Elizabeth Saylor are DISMISSED, and the claims of Plaintiff The National Federation of the Blind of Pennsylvania as set forth in Count VI under Title VII and Title I of the ADA are DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs' ADA Title II and RHA claims premised upon the allegations in paragraphs 16–29 and 34–38 are DISMISSED as time-barred as are plaintiffs' claims based upon defendants' refusal to promote Mr. Saylor between August, 1992 through February, 1993.

In all other respects, the motion is DENIED.